1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9   | Sonya Marie Lechuga, | No. CV-22-00264-PHX-DWL |

10  |          Plaintiff, | **ORDER** |

11  | v. |

12  | Commissioner    of    Social    Security |
    | Administration, |

13

14  |          Defendant. |

15          Plaintiff challenges the denial of her application for benefits under the Social

16  Security Act ("the Act") by the Commissioner of the Social Security Administration

17  ("Commissioner").   The Court has reviewed Plaintiff's opening brief (Doc. 11), the

18  Commissioner's answering brief (Doc. 12), and Plaintiff's reply (Doc. 13), as well as the

19  Administrative Record (Doc. 8, "AR"), and now affirms the Administrative Law Judge's

20  ("ALJ") decision.

21  I.     Procedural History

22          On April 29, 2019, Plaintiff filed an application for disability and disability

23  insurance benefits, alleging disability beginning on February 28, 2016.  (AR at 13.)  The

24  Social Security Administration ("SSA") denied Plaintiff's application at the initial and

25  reconsideration levels of administrative review and Plaintiff requested a hearing before an

26  ALJ.  (*Id.*)  On January 22, 2021, following a telephonic hearing, the ALJ issued an

27  unfavorable decision.  (*Id.* at 10-31.)  The Appeals Council later denied review.  (*Id.* at

28  1-6.)

II.  The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   <u>The ALJ's Decision</u>

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: degenerative disc disease and osteoarthritis.[1]  (AR at 16.)  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id.* at 18.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently, she can sit with normal breaks for a total of 6 hours in an 8 hour workday, she can stand and/or walk with normal breaks for a total of 6 hours in an 8 hour workday, she can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments, she can occasionally climb stairs or ramps, she can frequently balance, she can occasionally stoop, crouch, kneel or crawl, she must avoid concentrated exposure to extreme cold as well as vibration, she can perform frequent fingering, she can sit 5 minutes every 30 minutes while remaining on task, she can perform occasional reaching overhead, she can perform frequent reaching in all other directions.

(AR at 18.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 19-22.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) state agency medical consultants Krishna Mallik, M.D. ("persuasive"), Yosef Schwartz, M.D. ("not persuasive"), C. Combs, M.D. ("persuasive"), and M. Keer, D.O. ("persuasive"); (2) state agency psychological consultants Dr. Stephen Fair, Ph.D. ("not consistent with the objective record"), A. Gallucci. Psy.D. ("persuasive"), and N. Lazorwitz, Psy.D ("persuasive"); and (3) the findings of an unidentified "State agency Single Decision Maker" ("no persuasiveness"). (*Id.* at 22-24.)  Additionally, the ALJ evaluated a third-party statement from Thomas Palma, Plaintiff's boyfriend, and deemed

---

[1]     The ALJ also considered Plaintiff's plantar fasciitis, depressive disorder, and anxiety disorder but concluded they only caused "minimal limitation" and were thus "nonsevere."  (AR at 16-17.)

it "not persuasive."  (*Id.* at 23-24.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform her past relevant work as a receptionist medical office[2] and was also capable of performing other jobs that exist in significant numbers in the national economy, including office helper, mail clerk, and order clerk, food and beverage.  (*Id.* at 24-26.) Thus, the ALJ concluded that Plaintiff is not disabled.  (*Id.* at 26.)

IV.   Discussion

Plaintiff presents two issues on appeal: (1) "Whether the ALJ committed harmful error in finding Plaintiff pre- and post-fasciectomy plantar fasciitis to be non-severe, and by failing to consider all of her impairments in combination when formulating a Light RFC"; and (2) "Whether the ALJ abused her discretion and committed harmful error in failing to accept Plaintiff's testimony as true on feigned credibility grounds."  (Doc. 11 at 8.)  As a remedy, Plaintiff seeks a reversal or remand for a new hearing.  (*Id.* at 22.)

A.   **First Assignment Of Error**

Plaintiff's first assignment of error lumps together two distinct, if related, challenges—Plaintiff faults the ALJ for failing to categorize certain impairments as "severe" during step two of the sequential analysis and then faults the ALJ for failing to consider those impairments when formulating her RFC during later steps.  For purposes of analytical clarity, the Court will analyze those challenges separately.

To proceed beyond step two, a claimant must have a severe impairment, or a combination of severe impairments, that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations omitted).  Notably, "[s]tep two is merely a threshold determination meant to screen out weak claims."  *Buck v. Berryhill*, 869 F.3d

---

[2]      The ALJ explained that Plaintiff could perform her past relevant work "as generally performed" as opposed to how Plaintiff actually performed it with her previous employer. (*Id.* at 24.)

1   1040, 1048 (9th Cir. 2017) (citation omitted).   Because the ALJ must evaluate the

2   functional impact of both severe and non-severe impairments when determining the RFC

3   during later steps, "[t]he RFC . . . should be exactly the same regardless of whether certain

4   impairments are considered 'severe' or not."  *Id*. at 1049 (emphasis omitted).

5        Given these principles, to the extent Plaintiff's argument is that the ALJ erred by

6   failing to categorize her plantar fasciitis, shoulder impingement syndrome, and depression

7   and anxiety as severe for step-two purposes (Doc. 11 at 8-13), reversal is not warranted.

8   "As this Court has observed in earlier cases, Ninth Circuit law is not a model of clarity

9   concerning how to evaluate claims of step-two error.  Some cases suggest that, although it

10   is error for an ALJ to fail to characterize a particular impairment as 'severe' during step

11   two, the error can be disregarded as harmless if the ALJ properly addresses the impairment

12   during later steps.  Other decisions suggest that a claimant can't complain about an ALJ's

13   failure to identify a particular impairment as 'severe' during step two so long as the ALJ

14   determined the claimant also had other impairments that so qualify.  At any rate, the

15   dispositive issue is whether the ALJ properly evaluated the evidence and testimony

16   concerning that condition during later steps and factored that condition into the RFC."

17   *Harvey v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5822641, *2 (D. Ariz. 2021) (cleaned

18   up).   Accordingly, the dispositive issue here is whether Plaintiff has established the

19   existence of harmful error with respect to the ALJ's RFC formulation during later steps.

20   The dispute over the step-two severity characterization is a red herring.

21        As for the merits of the RFC determination, "[t]he ALJ assesses a claimant's RFC

22   based on all the relevant evidence in the case record.  The ALJ must consider both the

23   medical evidence and descriptions and observations of the claimant's limitations from the

24   claimant's impairment(s), including limitations that result from the claimant's symptoms,

25   such as pain, provided by the claimant, family, friends, and other people.  The RFC

26   assessment must contain a thorough discussion and analysis of the objective medical and

27   other evidence, including the individual's complaints of pain and other symptoms and the

28   adjudicator's personal observations, if appropriate.  In other words, the ALJ must take the

claimant's subjective experiences of pain into account when determining the RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (cleaned up). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.

The Court finds no harmful error in the ALJ's RFC formulation here. As an initial (and perhaps dispositive) matter, the ALJ followed the exact process that the relevant authorities and regulations require ALJs to follow when making an RFC determination—the ALJ expressly considered all of the medical opinions in the record, as well as Plaintiff's subjective testimony regarding her symptoms and the testimony of third-party witnesses regarding Plaintiff's symptoms, and provided reasons for crediting or not crediting each of those evidentiary sources. The ALJ also explained that the RFC was supported by the opinions of several medical sources whom the ALJ deemed credible and persuasive. Plaintiff conspicuously does not challenge the ALJ's evaluation of those medical sources' opinions or attempt to show that the RFC was somehow inconsistent with their opinions. Nor does Plaintiff argue that the ALJ erred by discrediting the opinions of the other medical sources whose opined-to limitations were more restrictive. And as discussed in Part IV.B below, although Plaintiff seeks to challenge the sufficiency of the ALJ's rationale for discrediting her symptom testimony, that challenge lacks merit.

To the extent Plaintiff's argument is that the ALJ erred by not expressly discussing all of her claimed impairments in the course of formulating the RFC (Doc. 11 at 11-14), this argument fails for several reasons. First, and most important, the Ninth Circuit has emphasized that "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Thus, in *Bayliss*, the Ninth Circuit affirmed despite the ALJ's "failure explicitly to address the drowsiness

side-effect of [the claimant's] medication and her reaction to stress," holding that it was unnecessary for the ALJ to expressly discuss those claimed symptoms in light of the ALJ's finding elsewhere that the claimant "was not credible." *Id.* at 1215, 1217. Here, too, the ALJ's finding that Plaintiff's symptom testimony was not fully credible—which itself is free of harmful error, as discussed in Part IV.B below—obviated the need for the ALJ to specifically explain, in the portion of the decision formulating the RFC, each of Plaintiff's claimed symptoms.

Second, at any rate, Plaintiff's arguments on this point are largely belied by the record. For example, although Plaintiff accuses the ALJ of failing to consider her plantar fasciitis after step two (Doc. 11 at 9-10 ["After that mention . . . plantar fasciitis never appears in the decision again . . . ."]), the ALJ deemed "persuasive" the opinions of several medical consultants who specifically noted Plaintiff's plantar fasciitis and addressed the limitations associated with that condition. (AR at 23, citing AR at 103, 107 [Dr. Combs assessment] and AR at 123, 127 [Dr. Keer assessment].) The ALJ also generally discussed how Plaintiff's activities (*i.e.*, "completing most personal care without aid or difficulty, driving a car, performing household chores including cleaning and laundry, grocery shopping, and playing outfield on a fast-pitch softball team as well as sewing, and even yard work such as gardening and draining and painting the pool") were "inconsistent with the finding that the claimant is limited to the level alleged because the claimant was able to engage in physical activity on a daily basis, despite allegations of being limited from being able to do so." (AR at 21-22.) The ALJ also ensured that Plaintiff would have a "sit/stand option" within her RFC. (*Id.* at 21 ["Nonetheless, out of an abundance of caution, the undersigned has included limitations in handling, fingering, and reaching, as well as a sit/stand option."].)

Similarly, although Plaintiff accuses the ALJ of failing to consider her shoulder condition when formulating the RFC (Doc. 11 at 12-13 ["[D]espite her diagnosis of shoulder impingement syndrome, the ALJ did not consider it in her RFC analysis, and failed to find it to be either severe or non-severe."]), the ALJ included an extensive

discussion of Plaintiff's shoulder condition in the portion of the RFC analysis addressing "reaching, handling and fingering limitations and allegations." (AR at 21.) Among other things, the ALJ cited treatment notes in which Plaintiff reported "improvement" and "mild" pain after her shoulder surgery (*id.*, citing *id.* at 399) and noted that such reports were consistent with the evidence that Plaintiff could play fast-pitch softball and do yard work. (*Id.*, citing *id.* at 662, 666.)

And again, although Plaintiff accuses the ALJ of "fail[ing] to discuss and consider" various spinal conditions, her chronic pain, and her depressive and anxiety disorders when formulating the RFC (Doc. 11 at 14), the ALJ expressly considered those conditions in the portion of the decision setting forth the RFC determination. (*See, e.g.*, AR at 21 ["The medical evidence of record is inconsistent with and does not support the claimant's allegations of disabling physical functional limitations due to degenerative disc disease . . . and osteoarthritis"]; *id.* at 20 ["The record indicates that the claimant . . . reported only mild pain, and that her pain does not interfere with her activities of daily living"]; *id.* [discussing Plaintiff's "discontinuance of prescription pain medication . . . [which] suggests improvement in her symptoms and conditions"]; *id.* at 21 [discussing Plaintiff's "spine . . . imaging studies"]; *id.* at 22-23 [discussing medical opinions addressing Plaintiff's mental impairments and noting that "treatment notes throughout the adjudicatory period indicate generally normal cognitive functioning, she was often noted to have no anxiety or depression, and she admitted she is able to participate in activities of daily living"].)

Finally, although the ALJ's opinion does not contain any express discussion of the eighth and final impairment that Plaintiff accuses the ALJ of ignoring (Doc. 11 at 14 ["[T]he impairments that the ALJ failed to discuss and consider in combination to arrive at the correct RFC included . . . [u]rological disorders status post hysterectomy, bladder sling, mesh, self-catheterization and incontinence"]), reversal is not warranted on this basis. Plaintiff did not mention this condition in her disability report (AR at 251 [no mention of urological condition in response to the question "List all of the physical or mental

conditions . . . that limit your ability to work"]) and included only a passing reference to it in her function report (AR at 266), without providing any details as to how it affects her ability to work.  In light of the ALJ's determination that Plaintiff's symptom testimony was not credible and separate determination (which Plaintiff does not independently challenge) that the medical opinions of certain sources who opined that Plaintiff had the ability to perform sustained work were persuasive, the ALJ's failure to expressly discuss Plaintiff's urological condition was either permissible under *Bayliss* or, at worst, harmless error.

B.   **Symptom Testimony**

1.   Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).  This is the most demanding standard in Social Security cases.  *Garrison*, 759 F.3d at 1015.

2.   The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ provided the following summary of Plaintiff's symptom testimony:

The claimant alleges an inability to engage in substantial gainful activity-level work due to mental and physical health problems which cause problems with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, with memory, with concentration, and getting along with others.  The claimant reported spending time with others such as her boyfriend and attending group functions such as church services.  She reported engaging in hobbies such as reading writing and watching television, but also stated she cannot do these well due to pain and can sit only 20 minutes at a time.  On the other hand, she testified she was able to travel 4 hours one way to a cabin, only stopping twice.  She stated she is able to go shopping in stores for up to 15 minutes at a time and can count change, handle a savings account and use a checkbook and money order but is unable to pay bills.  The claimant stated she can drive a car for transportation but prefers to travel places by getting rides.  She stated she is able to complete

1    some household chores, including cleaning and laundry once a week.  She
     reported some problems in completing personal care such as needing to sit
2    to get dressed and put on her shoes.  The claimant is prescribed, among other
     medication, Flexeril, codeine and Norco.
3

4    (AR at 19, internal citations omitted.)

5          The ALJ found that Plaintiff's "medically determinable impairments could

6    reasonably be expected to cause the alleged symptoms."  (*Id.*)  Nevertheless, the ALJ

7    declined to fully credit Plaintiff's symptom testimony because Plaintiff's "statements

8    concerning the intensity, persistence and limiting effects of these symptoms are not entirely

9    consistent with the medical evidence and other evidence in the record for the reasons

10   explained in this decision." (*Id.* at 19-20.)  The ALJ then identified an array of reasons for

11   making this determination.

12         First, as for Plaintiff's back pain, the ALJ determined that the "medical evidence of

13   record is inconsistent with and does not support the claimant's allegations of disabling

14   physical functional limitations due to degenerative disc disease (lumbar and cervical

15   spondylosis) and osteoarthritis." (*Id.* at 19.)  In support of this conclusion, the ALJ cited

16   imaging from 2017, which revealed "mild multilevel degenerative disc disease, mostly

17   pronounced and L4-L5 and L5-S1, without significant spinal canal stenosis or foraminal

18   narrowing, and also mild lumbar spondylosis." (*Id.*)  The ALJ also noted the following:

19   (1) straight leg raises more often indicated a negative result, (2) treatment notes indicated

20   that the disease as "stable" and "mild"; (3) treatment note showed that "claimant ambulated

21   with normal gait"; (4) Plaintiff's own testimony reported "mild pain" and generally no

22   interference with her "daily living" activities such as "completing most personal care

23   without aid or difficulty, driving a car, performing household chores including cleaning

24   and laundry, grocery shopping, and playing on a outfield on a fast-pitch softball team as

25   well as sewing, and even yard work such as gardening up to two hours at a time, and

26   draining and painting the pool"; (5) general improvement after an ablation treatment; and

27   (6) a reduction in the prescription pain medicine, Percocet.  (*Id.* at 20.)

28         Second, turning to Plaintiff's handling and fingering limitations, the ALJ limited

- 10 -

Plaintiff's RFC to "frequent fingering, she can perform occasional reaching overhead, she can perform frequent reaching in all other directions." (*Id.* at 21.) In support of this conclusion, the ALJ cited (1) Plaintiff's generally conservative (albeit failed) course of treatment that allowed her to retain a "full range of motion"; (2) Plaintiff's surgical results, including Plaintiff's "reported improvement," "mild" pain, and that "her symptoms did not interfere with activities of daily living"; and (3) the consistency between Plaintiff's surgical result notes and her own testimony that she is able "to perform activities of daily living" listed above. (*Id.*)

Third, the ALJ noted general inconsistencies between Plaintiff's claimed symptoms and Plaintiff's activities of daily life ("ADLs"), such as "completing most personal care without aid or difficulty, driving a car, performing household chores including cleaning and laundry, grocery shopping, and playing outfield on a fast-pitch softball team as well as sewing, and even yard work such as gardening and draining and painting the pool." (*Id.*, citing AR at 266-67, 269-70, 483, 572, 610, 662, 666, 724, 991-92.)

### 3.   The Parties' Arguments

Plaintiff argues the ALJ "effectively discredited her testimony" even though it "was supported by medical evidence and there is no affirmative evidence of malingering." (Doc. 11 at 14-15.) Plaintiff argues that, overall, "[t]he medical evidence and Plaintiff's testimony provide ample support for her claim that her impairments and functional limitations would make Light Work unviable." (*Id.* at 14.) Plaintiff then verbatim transcribes various portions of her hearing testimony that went uncredited by the ALJ, "highlighted by italicized and/or bolded emphases." (*Id.* at 15-21.)

The Commissioner responds that "the ALJ provided valid reasons for determining that Plaintiff's symptom allegations were not entirely supported by the record" and that Plaintiff provided "no more than extensive verbatim quotations from her testimony" to combat the ALJ's conclusion. (Doc. 12 at 16.) The Commissioner further argues that "Plaintiff provides no citation to any objective evidence in the record, nor reference to the ALJ's analysis to support any allegation of error. Indeed, Plaintiff does not even specify

precisely what portions of the extensively quoted testimony should have been credited and why." (*Id.*)

Plaintiff's reply clarifies that the ALJ discounted the following hearing testimony:

In addition to the medical records documenting all of Plaintiff's impairments, she testified at hearing that her last job ended because of so many doctor's appointments, too many back issues and because she was unable to sit long enough. She also testified that in that job she had numbness and tingling in her hands and arms and in her fingertips and that she required accommodations to work at all. In response to the question why she believed she could not work, Plaintiff related trouble standing for a length of time, and that sitting was irritating due to trouble with her neck, which caused spasms to her hands down to her fingertips. Finally, in response to counsel's examination, Plaintiff testified that she had doctor's appointments on 15 to 20 days out of each month.

(Doc. 13 at 4, internal citations omitted.) Plaintiff contends that her testimony was "entirely consistent with and corroborated by her long and painful medical history, all of her cervical, thoracic and lumbar imaging and all of the clinical reports and mental health records" and "[t]here was no clear and convincing evidence that would justify an ALJ to reject her testimony." (*Id.*)

4.   Analysis

As an initial matter, Plaintiff's opening brief does not meaningfully address (let alone challenge the sufficiency of) the ALJ's proffered rationales for rejecting Plaintiff's symptom testimony. Instead, the opening brief simply summarizes Plaintiff's testimony and then asserts in conclusory fashion that the ALJ erred by failing to accept it. This is not an appropriate way to attempt to establish harmful error in a Social Security appeal.

At any rate, the Court has independently examined the ALJ's analysis and finds no harmful error. For example, it was permissible under Ninth Circuit law for the ALJ to discount Plaintiff's symptom testimony due to its inconsistency with Plaintiff's ADLs. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency with ADLs was also supported by substantial evidence.  In her function report, Plaintiff stated that she cannot bend, stand, or walk without pain and "can only sit for 20 minutes" and identified "play[ing] softball" as an activity that she was "able to do before [her] illness, injuries, and condition that [she] can't do now."  (AR at 267, 270-71.)  However, Plaintiff admitted during her hearing testimony that she went on a four-hour car trip during which she only needed two breaks.  (*Id.* at 43-44.)  Additionally, and more damning, Plaintiff reported to her physical therapist during an August 2018 appointment—which is years after the period of alleged disability began—that "she plays fast pitch softball and plays outfield without a problem."  (*Id.* at 662.)  It was rational for the ALJ to view these admissions as inconsistent with Plaintiff's description of herself in the function report, and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas*, 278 F.3d at 954.  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").

It was also permissible under Ninth Circuit law for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record.  Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is

- 13 -

coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency with the objective medical evidence was also supported by substantial evidence. For example, as for Plaintiff's disc and spinal injuries, the ALJ identified medical records evidence that characterized "claimant's degenerative disc disease as 'stable' and 'mild.'" (AR at 20, citing AR at 354-55 ["[u]nchanged mild multilevel disc degenerative disease"]; 357 [noting normal alignment, mild spondylosis, and an unchanged small "central disc osteophyte complex"]; 537, 541 [generally normal imaging].) The ALJ also identified medical records showing that Plaintiff "ambulated with normal gait" on multiple occasions. (AR at 20, citing AR at 381, 410, 611, 641, 825, 884, 950, 1019, 1061.) Meanwhile, when discussing Plaintiff's shoulder pain, the ALJ identified treatment notes after Plaintiff's surgery that she reported "improvement" and "mild" pain. (AR at 21, citing AR at 399.)

Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony, any other shortcomings in the ALJ's analysis—such as the ALJ's purported failure, as argued by Plaintiff in her reply, to address the frequency of her medical appointments (Doc. 13 at 4)—was harmless. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but

also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 16th day of March, 2023.

_____
Dominic W. Lanza
United States District Judge